UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|   |   |
|---|---|
| ANGEL OCHOA,<br>　　　　　　　　　　　Petitioner,<br><br>　v.<br><br>K. MENDOZA-POWERS, Warden<br>　　　　　　　　　　　Respondent. | NO. 1:07-CV-00208-WWS<br><br>**ORDER DENYING<br>§ 2254 PETITION** |

Angel Ochoa, a state prisoner proceeding *pro se* and *in forma pauperis*, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Ochoa was convicted in 1985 of second degree murder and assault with a deadly weapon based on his no contest pleas. The Petition challenges the Board of Parole Hearings' ("BPH" or "Board") determination that Ochoa was unsuitable for parole following a subsequent parole consideration hearing on February 16, 2006. The court denies the Petition.

**I. Background**

On August 16, 1984, Ochoa was thrown out of a bar after an altercation with a member of the Heathens Motorcycle Club. Answer, Ex. 3 at 2. About fifteen minutes later, Lowell Phillips, another member of the Heathens Motorcycle Club, escorted a patron out of the bar. *Id*. at 3. Ochoa was in the parking lot in his car and fired multiple shots, one of which struck Phillips in the head, killing Phillips. *Id*.; Answer, Ex. 2 (Transcript of February 16, 2006, Subsequent Parole Consideration Hearing) at 7. Hearing the shots, Phillip Cook ran outside and attempted to get Ochoa's license plate number. Answer, Ex. 3 at 3. Ochoa then shot Cook, striking him in the

abdomen. *Id*.

Ochoa pled no contest to second degree murder and assault with a deadly weapon in exchange for a reduction from the original charge of first degree murder and dismissal of an attempted murder charge. In March 1985, the Santa Barbara Superior Court denied Ochoa's motion to withdraw his pleas, finding that he understood the pleas. The court sentenced Ochoa to four years for assault with a deadly weapon and fifteen years to life for second degree murder plus a two year firearm enhancement. On appeal, the California Court of Appeal affirmed the judgment and corrected it to reflect that Ochoa was to serve the four year assault term first, followed by the two year firearm enhancement and then the fifteen years to life term. Answer, Ex. 1.

Ochoa's initial parole hearing was held in February 1994. He was denied parole at multiple subsequent parole consideration hearings between 1998 and 2005. Pet. at 14–16; Traverse at 14–15. The Board again denied parole for one year at the February 16, 2006, subsequent parole consideration hearing. Ochoa challenged the February 2006 parole denial in a petition for a writ of habeas corpus in the Santa Barbara Superior Court, which the court denied on June 5, 2006, for failing to state facts on which relief could be granted. As the government concedes, *see* Answer ¶ 7, Ochoa cured the defects from his first petition in the habeas petition he filed in the California Court of Appeal, which was summarily denied on September 7, 2006. Ochoa filed a petition for review in the California Supreme Court, which was summarily denied on November 29, 2006. Ochoa timely filed his § 2254 Petition on January 18, 2007.[1]

---

[1] Ochoa originally filed his § 2254 Petition in the Central District of California. His case was transferred to the Eastern District of California on January 31, 2007.

## II. Standard of Review

Ochoa's Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a federal court may grant the Petition only if Ochoa demonstrates that the state court decision denying relief was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). Where there is a state court decision on the merits but no reasoned state court decision, the federal court "conduct[s] an independent review of the record . . . to determine whether the state court clearly erred in its application of controlling federal law." *Luna v. Cambra*, 306 F.3d 954, 960–61, 961 n.3 (9th Cir. 2002) (internal quotation marks omitted), *amended on other grounds*, 311 F.3d 928 (9th Cir. 2002). Though the "postcard denial" by the California Supreme Court constitutes a decision on the merits, there is no reasoned state court decision to which to "look through" where the appellate court also summarily denied Ochoa's habeas petition and the superior court denied Ochoa's first habeas petition on procedural grounds. *See id*.

## III. Discussion

Ochoa's Petition asserts three due process grounds for habeas relief: (1) the Board breached Ochoa's plea agreement by denying parole and incarcerating Ochoa beyond the term of his plea; (2) the Board's denial of parole was not supported by some evidence; and (3) California's alleged "no-parole policy" rendered Ochoa's parole hearing unfair.

### A. Ochoa's Plea Agreement Claim Fails

A defendant has a due process right to enforce the terms of his plea agreement. *Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006) (en banc); *see Santobello v. New York*, 404 U.S. 257, 261–62 (1971). A plea agreement is contractual in nature and interpreted under state contract law. *See Ricketts v. Adamson*, 483 U.S. 1, 6 n. 3 (1987); *Buckley*, 441 F.3d at 694–95.

Ochoa contends that after subtracting his pre-sentence, work-time, and behavioral credits, he has served his sentence and release on parole is mandatory under his plea agreement. According to Ochoa, the Board breached Ochoa's plea agreement by denying parole and continuing to incarcerate Ochoa. The continued incarceration, Ochoa argues, effectively changes his second degree plea to a first degree plea.

Ochoa's claim fails because his plea agreement was for an indeterminate sentence and neither the trial court nor prosecutor expressly promised that Ochoa would be paroled after serving twenty-one years. Though the trial court initially did state that Ochoa had "a right to parole" in response to a question from Ochoa, the trial court clarified that Ochoa may become "eligible for parole." Answer, Ex. 9 at 5–6 ("For this offense when you are sentenced to life in prison, you do have a right to parole. But you must first serve the 21 years less any good and work time credit that they give you before you can become *eligible* for parole.") (emphasis added). The trial court further stated, "At the end of your time in prison, you *may be* placed on a parole." *Id.* at 6 (emphasis added). The state court's denial of Ochoa's breach claim was not contrary to or an unreasonable application of clearly established federal law and was not an unreasonable determination of the facts.

**B. Some Evidence Supports the Board's Denial of Parole**

A California state prisoner has a protected liberty interest in parole because the California parole statute uses mandatory language such as "shall" to "creat[e] a presumption that parole release will be granted' when the designated findings are made." *Bd. of Pardons v. Allen*, 482 U.S. 369, 377–78 (1987) (*quoting Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979)); *see McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002); Cal. Penal Code § 3041(b) (the panel or board "shall set a release date"). Because Ochoa has a protected liberty interest in parole, the court examines whether the deprivation of this interest violated due process. *See Ky. Dep't. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Due process requires that parole board decisions are supported by "some evidence." *McQuillion*, 306 F.3d at 904; *Jancsek v. Or. Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987) (adopting the some evidence standard set forth by the Supreme Court in *Superintendent v. Hill*, 472 U.S. 445, 456 (1985)).[2]

The court's analysis of whether the Board's decision is supported by some evidence is framed by the state statutes and regulations governing parole suitability determinations. *Irons*, 505 F.3d at 851; *cf. Allen*, 482 U.S. at 377–78 (looking to state statute to determine whether a protected liberty interest in parole exists). California law mandates that a parole release date be set unless the panel or board determines that "public safety requires a more lengthy period of incarceration . . . ." Cal. Penal Code § 3041(b). The Board must consider "[a]ll relevant, reliable

---

[2] The court rejects the government's contention that the some evidence standard does not apply in federal habeas proceedings. The Ninth Circuit has repeatedly held that the some evidence standard is clearly established federal law and applies to habeas petitions for denials of parole. *See, e.g.*, *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128–29 (9th Cir. 2006); *Biggs v. Terhune*, 334 F.3d 910, 915 (9th Cir. 2003); *McQuillion*, 306 F.3d at 904.

5

information" in determining suitability for parole and state regulations provide general guidelines for this determination. Cal. Code Regs. tit. 15, § 2402(b)-(d). If a life prisoner "will pose an unreasonable risk of danger to society if released from prison," he "shall be found unsuitable for and denied parole." *Id*. at § 2402(a).

The California Supreme Court recently clarified the statutory standard applicable to parole suitability determinations. The court stated that "the paramount consideration for both the Board and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety." *In re Lawrence*, 44 Cal. 4th 1181, 1210, 82 Cal. Rptr. 3d 169, 189, 190 P.3d 535, 552 (2008). The court held that the standard of review is "whether 'some evidence' supports the conclusion that the inmate is unsuitable for parole because he or she currently is dangerous." *Lawrence*, 44 Cal. 4th at 1191, 82 Cal. Rptr. 3d at 173, 190 P.3d at 539.

The Board identified four reasons for finding Ochoa unsuitable for parole. First, the commitment offense was "inexplicable," "dispassionate and calculated," was carried out in an "especially cruel and callous manner," and multiple victims were attacked. Answer, Ex. 2 at 49, 57. Second, the Board found that Ochoa did not take full responsibility for the crime where he stated that it was caused by alcohol and that he was confused by alcohol. *Id*. at 50. Third, the Board found that Ochoa "failed to profit from . . . previous attempts to correct [his] criminality." *Id*. at 51. Ochoa received two years probation for burglary in 1981, was arrested for burglary a second time, was fined for driving without a license, and was arrested for driving a stolen vehicle. *Id*. Finally, the Board expressed concern regarding whether Ochoa would survive in Mexico and stay away from alcohol, and whether Ochoa would attempt to return to the United States if deported to Mexico because many of his relatives are in the United States. *Id*. at 54–56.

6

The Board emphasized that Ochoa was "very close to being paroled" and made the following recommendations for Ochoa's next parole hearing: that Ochoa (1) take full responsibility for the crime and not make statements that the crime was caused by alcohol; (2) have the psychologist clarify and/or correct the inconsistencies in her report[3]; (3) submit a letter from Ochoa's wife clearly stating that she and their younger child would move to Mexico with Ochoa if he was deported, addressing the Board's concerns; (4) improve his parole plans by including information about his ability to participate in Alcoholics Anonymous ("A.A.") in Mexico and additional information about the clinic; and (5) get updated work supervisor reports from Avenal Prison where there was a lapse in time in Ochoa's work supervisor reports. Answer, Ex. 2 at 50, 53–56, 60.

The Board also identified positive suitability factors but concluded that the unsuitability factors outweighed these positive factors. The Board commended Ochoa for (1) remaining discipline-free since 1988; (2) his "exceptional work reports" for sewing machine repair and noted that his repair experience was a "tremendous marketable skill"; (3) participation in self-help programs including A.A. attendance since 1991, personal growth seminars, a Catholic spiritual growth program, bible study, and a conflict and confrontation program; (4) his 11.2 grade point level; (5) having good parole plans for living and working in Mexico or the United States; and (6) his "great letters of support" from his family. *Id*. at 52–54, 57.

There is "some evidence" to support the Board's finding that Ochoa is a danger to society

---

[3] The Board disregarded the April 2005 psychological report from Dr. Corinne Schroeder because the Board, agreeing with Ochoa's counsel at the parole hearing, did not think it was accurate and found internal inconsistencies and inconsistencies with previous psychological reports. Answer, Ex. 2 at 53–54, 4–5.

or a threat to public safety. Unlike *Lawrence*, the Board did not rely solely or primarily on the commitment offense. Given that alcohol played a significant role in the commitment offense, the Board had legitimate concerns that Ochoa not relapse in Mexico, not attempt to return to the United States, and take full responsibility for the crime. *See* Cal. Code Regs. tit. 15, § 2402(b) (Board must consider all relevant information including past and present attitude toward the crime). In addition, the Board's decision was balanced where it also commended Ochoa for several positive factors and disregarded the April 2005 psychological report due to inconsistencies and errors in the report that were damaging to Ochoa.

### C. Ochoa's "No Parole Policy" Claim Fails

Ochoa contends that the "only reason" the Board denied parole was because the Governor would reverse such a grant under the state's "no parole policy." Pet. at 6. Ochoa's claim is contradicted by the record. As described above, the Board denied parole based on a number of reasons. The record also demonstrates that the denial was based on Ochoa's individual circumstances and not based on any blanket policy. Therefore, habeas relief is not warranted on this claim.[4]

Ochoa requests a limited evidentiary hearing to examine two former BPH Commissioners regarding Ochoa's allegation that California has a "no parole policy." Traverse at 8–9. The court denies Ochoa's request because he has not "alleged facts that, if proven, would entitle him to habeas relief." *Tilcock v. Budge*, 538 F.3d 1138, 1143 (9th Cir. 2008); *see*

---

[4] In addition, the Commissioner's statement that the Governor would agree with the Commissioner's concerns and reverse a grant of parole, *see* Answer, Ex. 2 at 56, is not an acknowledgment of an alleged "no parole policy" or a suggestion that a possible reversal by the Governor was the "only reason" for denying parole.

28 U.S.C. § 2254(e)(2).

**IV. Conclusion**

For the reasons stated above, Ochoa's Petition for a Writ of Habeas Corpus is **DENIED**.

IT IS SO ORDERED.

DATED: April 16, 2009

<u>   **/s/ William W Schwarzer**   </u>
Hon. William W Schwarzer
United States District Judge